UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CHARLES SCOTT BENSON,<br><br>                    Plaintiff,<br><br>     vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>                    Defendant. | CIV. 16-5061-JLV<br><br><br>ORDER |

## INTRODUCTION

This is an action plaintiff Charles Scott Benson brought against
defendant Wells Fargo Bank, N.A. (Docket 1). Defendant filed a motion to
dismiss counts nine and ten of plaintiff's first amended complaint. (Docket 5).
Plaintiff filed a motion for leave to file a second amended complaint.
(Docket 20). Plaintiff also filed a motion to compel defendant's payment of the
fees associated with defendant's deposition of plaintiff's expert witness.
(Docket 15).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for a job with defendant's home mortgage division on
September 25, 2007. (Docket 1-1 at p. 3). Recruiters affiliated with defendant
had been in contact with plaintiff about the job since October 2006. Id. at
pp. 1-2. Plaintiff indicated to the recruiters he had a misdemeanor theft
conviction from several years earlier. Id. at pp. 2-4. In his job application
plaintiff disclosed his conviction. Id. at pp. 3-4. The recruiters told plaintiff his

conviction would not affect his employment.  Id.  Defendant completed a background check of plaintiff, offered him a job and he started work in November 2007.  Id.

In January 2011, defendant screened the backgrounds of many of its employees.  Id. at p. 5.  Defendant states it conducted the screenings to comply with recently-enacted federal law.  (Docket 6 at p. 2).  The screening of plaintiff revealed the conviction he disclosed in his original job application.  (Docket 1-1 at p. 5).  Defendant believed the Financial Institutions Reform, Recovery and Enforcement Act ("FIRRE"), 12 U.S.C. § 1829(a), required terminating plaintiff.  (Docket 1-1 at p. 5).  FIRRE prohibits a person convicted of a crime involving dishonesty from working in plaintiff's position at a federally insured institution.  12 U.S.C. § 1829(a); (Docket 1-1 at p. 5).  Defendant terminated plaintiff's employment on February 15, 2011.  (Docket 1-1 at p. 5).

Plaintiff filed his original complaint against defendant in South Dakota state court on March 18, 2011.  (Docket 14-3).  The complaint revolved around defendant firing plaintiff and included nine counts: breach of contract, promissory estoppel, fraudulent inducement, fraudulent concealment, fraud and deceit, negligent misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress and punitive damages.  Id. at pp. 5-11.  On June 6, 2016, the state court granted plaintiff leave to file an amended complaint, and he filed his first amended complaint on June 13, 2016.  (Docket 1-1).

Plaintiff's first amended complaint introduces two new counts.  Id. at

pp. 12-32.  At count nine of the first amended complaint plaintiff sets forth a

claim based on violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

§ 1681.  (Docket 1-1 at pp. 12-16).  Plaintiff claims defendant "failed to comply

with the procedural protections and requirements of the FCRA when it used

the consumer reports of [p]laintiff and hundreds of other employees to make

adverse employment decisions resulting in their termination."  Id. at p. 12.

Plaintiff alleges:

> 59.  Years after hiring Plaintiff, Defendant ordered a background check, which is a consumer report, from First Advantage Background Services Corp. ("First Advantage"), which is a consumer reporting agency . . . .
>
> 66. . . . Defendant failed to provide a clear and conspicuous written disclosure in a document that consists solely of that disclosure to Plaintiff, that a consumer report may be obtained for employment purposes.
>
> 67.  Defendant further failed to obtain a valid authorization to procure a consumer report for employment purposes from Plaintiff.
>
> 68.  Defendant further failed to provide Plaintiff with the required notice and a copy of the consumer report upon which it based its decision to take adverse employment action against Plaintiff, within the timeframes required under the FCRA.
>
> 69.  Defendant further failed to provide Plaintiff with a written summary of his FCRA rights prior to taking adverse employment action against him.
>
> 70.  Defendant terminated Plaintiff without providing any advance notice of such adverse action.

Id. at pp. 13-14.  Paragraphs 66 and 67 delineate violations of the FCRA's

disclosure and authorization requirements in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

This section provides that when a consumer report is procured for employment

purposes, the consumer must first authorize the procurement in writing and receive "a clear and conspicuous disclosure . . . in a document that consists solely of the disclosure" before the report is obtained. Id. Paragraphs 68 and 69 of plaintiff's first amended complaint assert violations of the FCRA's "[c]onditions on use [of consumer reports] for adverse actions . . . ." 15 U.S.C. § 1681b(b)(3) (bold omitted). These conditions require the consumer to receive a copy of the credit report and a description of the consumer's rights before "any adverse action based in whole or in part on the report" may occur. 15 U.S.C. §§ 1681b(b)(3)(A)(i)-(ii).

The first amended complaint's tenth count sets forth a claim based on violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964. (Docket 1-1 at pp. 16-32). Plaintiff alleges defendant hired him and numerous other people with criminal records disqualifying them from their jobs, and defendant deliberately failed to obtain consent from the Federal Deposit Insurance Corporation ("FDIC") as federal law required. Id. at pp. 17-18; see 18 U.S.C. § 1829. Plaintiff asserts defendant's termination of his employment was part of a "Background Checks Project" ("Project") defendant instituted to terminate "employees en masse . . . under the auspices of compliance with federal regulation . . . ." (Docket 1-1 at p. 21). During this Project, plaintiff claims defendant "explicitly instructed the operative group for the Background Checks Project **not** to share [the project's] information, or the fact that the Project was actually a 'business decision,' with lower level

management and rank-and-file employees." Id. at pp. 21-22 (emphasis in original).

Plaintiff states the Project constituted a pattern of racketeering activity affecting interstate commerce carried out by a "higher-level group" of defendant's employees. Id. at p. 24. According to plaintiff, the purpose of the Project was "terminating employees in mass, reducing payroll, eliminating earned and accrued employee bonuses and benefits, and depressing the relevant job-market, under the fraudulent pretext of compliance with federal regulation." Id. Plaintiff alleges defendant made "affirmative fraudulent representations" regarding federal law requiring termination of employees and "deliberately conceal[ed] and omit[ted] material facts to [p]laintiff" so it could advance its scheme. Id. at p. 28.

## ANALYSIS

### I. STANDING

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III [of the United States Constitution.]" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "Standing . . . is a jurisdictional requirement, and thus 'can be raised by the court sua sponte at any time during the litigation.'" Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1156-57 (8th Cir. 2008) (quoting Delorme v. United States, 354 F.3d 810, 815 (8th Cir. 2004)). "The [standing] doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. In this way, the law of Article III standing . . . serves to prevent

the judicial process from being used to usurp the powers of the political branches, and confines the federal courts to a properly judicial role . . . ." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (internal citations omitted) (internal quotation marks omitted).

"The 'irreducible constitutional minimum' of standing consists of three elements." Id. (quoting Lujan, 504 U.S. at 560). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citations omitted). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)). "In assessing a plaintiff's Article III standing, we must 'assume that on the merits the plaintiffs would be successful in their claims.' " Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency, 836 F.3d 963, 968 (8th Cir. 2016) (quoting Muir v. Navy Fed. Credit Union, 529 F.3d 1100, 1106 (D.C. Cir. 2008)).

The second and third elements of standing tend to be straightforward, but the injury element is harder to pin down. The United States Supreme Court recently ruled on the injury element in Spokeo. Spokeo clarified the requirements that the injury suffered is "concrete and particularized . . . ." Spokeo, 136 S. Ct. at 1548 (citing Lujan, 504 U.S. at 560) (internal quotation marks omitted). A particularized injury "affect[s] the plaintiff in a personal and individual way[,]" as opposed to an injury affecting an undifferentiated collection of people. Id. (citations omitted). A concrete injury is one that

6

"actually exist[s]." Id. It can be a tangible injury, such as physical pain, or it can be intangible, like curtailing someone's right to free speech. Id. at 1549 (citing Pleasant Grove City v. Summum, 555 U.S. 460 (2009)). Spokeo acknowledged Congress can create statutes providing people rights, which, if violated, may result in an Article III injury. Id.; see, e.g., Fed. Election Comm'n v. Akins, 524 U.S. 11, 20-25 (1998) (holding that certain voters' "inability to obtain information" Congress chose to make accessible to them yielded an Article III injury). However, Spokeo held "Article III standing requires a concrete injury even in the context of a statutory violation. . . . [A plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Spokeo, 136 S. Ct. at 1549.

Based on the parties' briefing and the court's view of this case, the court must determine standing in relation to plaintiff's FCRA claims only. See Dockets 28, 29 & 32. For the FCRA allegations, the core issue is whether plaintiff sets forth violations of substantive rights sufficient to constitute a concrete injury or whether he asserts "a bare procedural violation, divorced from any concrete harm . . . ." Spokeo, 136 S. Ct. at 1549

The court notes this precise issue divides many United States District Courts. Compare Thomas v. FTS USA, LLC, 193 F. Supp. 3d 623, 629-37 (E.D. Va. 2016); Banks v. Cent. Refrigerated Servs., Inc., No. 2:16-CV-356, 2017 WL 1683056, at *3 (D. Utah May 2, 2017), with In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litigation, MDL No. 2615, 2017 WL 354023, at *4-

7

11 (D.N.J. Jan. 24, 2017); <u>Fisher v. Enterprise Holdings, Inc.</u>, No. 15-CV-00372, 2016 WL 4665899, at *2-4 (E.D. Mo. Sept. 7, 2016).[1]  In <u>Thomas</u> and <u>Banks</u>, the courts concluded the FCRA violations before them set forth concrete injuries because they involved substantive rights.  <u>See</u> <u>Thomas</u>, 193 F. Supp. 3d at 637 ("Section 1681b(b)(3), like § 1681b(b)(2)(A), provides the consumer with a legally cognizable right to specific information."); <u>Banks</u>, 2017 WL 1683056, at *3 (noting "[s]everal courts have recognized that multiple sections of the FCRA provide consumers with a [substantive] right to information").  In contrast, the courts in <u>In re Michaels Stores</u> and <u>Fisher</u> determined the FCRA claims did not constitute more than procedural rights, which alone do not amount to concrete injuries.  <u>See</u> <u>In re Michaels Stores, Inc.</u>, 2017 WL 354023, at *7 ("I respectfully disagree with <i>Thomas's</i> conclusion that the disclosure requirements set forth in § 1681b(b)(2)(A)(i) are substantive rather than procedural."); <u>Fisher</u>, 2016 WL 4665899, at *4-5.

In reaching its conclusion about the nature of the rights the FCRA confers, <u>Thomas</u> started, "as <u>Spokeo</u> instructs, [by] look[ing] to the common law and to the judgment of Congress, as reflected in the FCRA, to determine whether the violations of that statute alleged by [the plaintiff] constitute concrete injuries that satisfy the case or controversy requirement."  <u>Thomas</u>, 193 F. Supp. 3d at 631.

---

[1]Defendant's brief on standing collects many cases finding no concrete injury in FCRA violations.  (Docket 29 at pp. 5-6 n.5).

The <u>Spokeo</u> Court itself explained the background of Congress passing

the FCRA:

> The FCRA seeks to ensure "fair and accurate credit reporting."
> § 1681(a)(1). To achieve this end, the Act regulates the creation
> and the use of "consumer report[s]"[2] by "consumer reporting
> agenc[ies]"[3] for certain specified purposes, including credit
> transactions, insurance, licensing, consumer-initiated business
> transactions, and employment. <u>See</u> §§ 1681a(d)(1)(A)-(C); § 1681b.
> . . . [T]he FCRA applies to companies that regularly disseminate
> information bearing on an individual's "credit worthiness, credit
> standing, credit capacity, character, general reputation, personal
> characteristics, or mode of living." § 1681a(d)(1).
>
> The FCRA imposes a host of requirements concerning the creation
> and use of consumer reports. . . . [T]he Act requires consumer
> reporting agencies to "follow reasonable procedures to assure
> maximum possible accuracy of" consumer reports, § 1681e(b); to
> notify providers and users of consumer information of their
> responsibilities under the Act, § 1681e(d); to limit the
> circumstances in which such agencies provide consumer reports
> "for employment purposes," § 1681b(b)(1); and to post toll-free
> numbers for consumers to request reports, § 1681j(a).

<u>Spokeo</u>, 136 S. Ct. at 1545.

---

[2]"The Act defines the term 'consumer report' as: 'any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
(A) credit or insurance to be used primarily for personal, family, or household purposes;
(B) employment purposes; or
(C) any other purpose authorized under section 1681b of this title.'
15 U.S.C. § 1681a(d)(1)."

[3]" 'The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.' § 1681a(f)."

The sections at issue in this case are 15 U.S.C. §§ 1681b(b)(2)(A) &

1681b(b)(3)(A).  (Docket 1-1 at p. 13); see supra 3-4.  Section 1681b(b)(2)(A)

stated in full reads:

> [A] person may not procure a consumer report, or cause
> a consumer report to be procured, for employment purposes
> with respect to any consumer, unless: (i) a clear and
> conspicuous disclosure has been made in writing to the
> consumer at any time before the report is procured or caused
> to be procured, in a document that consists solely of the
> disclosure, that a consumer report may be obtained for
> employment purposes; and (ii) the consumer has authorized in
> writing (which authorization may be made on the document
> referred to in clause (i)) the procurement of  the report by that
> person.

The Thomas court held § 1681b(b)(2)(A) establishes two rights.  Thomas,

193 F. Supp. 3d at 631-32.  "First, it establishes a right to specific information

in the form of a clear and conspicuous disclosure," which is supported by "the

textual command that the disclosure be clear and conspicuous."  Id. at 631.

"Second, [it] establishes a right to privacy in one's consumer report that

employers may invade only under stringently defined circumstances."  Id. at

631-32.  Thomas held those rights "are clearly substantive, and neither

technical nor procedural."  Id. at 632; see Demmings v. KKW Trucking, Inc.,

No. 14-CV-494, 2017 WL 1170856, at *8 (D. Or. Mar. 29, 2017) ("The Court

finds persuasive these, and other cases that similarly hold that the Sections

1681b(b)(2)(B) and (b)(3)(B) and similar provisions of the FCRA establish

substantive informational and privacy rights held by the consumer."); Mix v.

Asurion Ins. Servs. Inc., No. CV-14-02357, 2016 WL 7229140, at *6 (D. Ariz.

Dec. 14, 2016) ("Violations of FCRA that unfairly deprive a consumer of

relevant information, or obtain consent for a background check without a statutorily-proper disclosure, implicate the harms Congress identified in FCRA, and thus cause concrete harms."); <u>Moody v. Ascenda USA Inc.</u>, No. 16-CV-60364, 2016 WL 5900216, at *5 (S.D. Fla. Oct. 5, 2016) (holding § 1681b(b)(2)(A) confers substantive rights); <u>Meza v. Verizon Commc'ns, Inc.</u>, No. 16-CV-0739, 2016 WL 4721475, at *3 (E.D. Cal. Sept. 9, 2016) (same).

In <u>Syed v. M-I, LLC</u>, the United States Court of Appeals for the Ninth Circuit adopted the view that § 1681b(b)(2)(A) is a grant of substantive rights. 853 F.3d 492, 499 (9th Cir. 2017). The Ninth Circuit held:

> Syed alleges more than a "bare procedural violation." The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process. The authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check. By providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy." <u>See</u> <u>Spokeo</u>, 136 S. Ct. at 1549 (quoting <u>Lujan</u>, 504 U.S. at 580 (Kennedy, J., concurring)).

The court is aware other courts have come to the opposite conclusion: that § 1681b(b)(2)(A) consists of procedural rights the violation of which does not amount to an Article III injury. <u>See</u> <u>In re Michaels Stores, Inc.</u>, 2017 WL 354023, a *7-8; <u>Landrum v. Blackbird Enters., LLC</u>, No. CV 16-0374, 2016 WL 6075446, at *3-4 (S.D. Tex. Oct. 3, 2016). The court respects the well-

reasoned rulings in <u>In re Michaels Stores</u> and <u>Landrum</u>.  But the court disagrees with their analysis of the FCRA.

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  <u>Spokeo</u>, 136 S. Ct. at 1549.  The FCRA's backdrop the Ninth Circuit explained in <u>Syed</u> supports concluding § 1681b(b)(2)(A) grants substantive rights.  In 1996, Congress amended the 26-year-old FCRA with the specific concern that "prospective employers were obtaining and using consumer reports in a manner that violated job applicants' privacy rights."  <u>Syed</u>, 853 F.3d at 496 (citing S. Rep. No. 104-185 at 35 (1995)).  "The disclosure and authorization provision codified at 15 U.S.C. § 1681b(b)(2)(A) was intended to address this concern by requiring the prospective employer to disclose that it may obtain the applicant's consumer report for employment purposes and providing the means by which the prospective employee might prevent the prospective employer from doing so—withholding of authorization."  <u>Id.</u> (citing S. Rep. No. 104-185 at 35)).  Section 1681b(b)(2)(A) advances Congress' broader goals of "ensuring accurate credit reporting, promoting efficient error correction, and protecting privacy."  <u>Id.</u> at 496-97.  By enacting the FCRA, Congress found there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).  As time moved forward and technology developed, the "modern information age has shined a spotlight on information privacy, and on the widespread use of consumer credit reports to

collect information in violation of consumers' privacy rights." Syed, 853 F.3d at 495.

Turning to § 1681b(b)(2)(A) with this background in mind, it is clear the statute takes the consumer's personal information and grants the consumer substantive protections regarding its release. To protect the consumer's personal information, § 1681b(b)(2)(A) grants the consumer a right to information in a disclosure form and a right to privacy an employer "may invade only under stringently defined circumstances." See Thomas, 193 F. Supp. 3d at 631-32. If an employer does not secure the consumer's disclosure authorization as the statute requires, the employer may "unfairly deprive a consumer of relevant information, or obtain consent for a background check without a statutorily-proper disclosure, [which] implicate[s] the harms Congress identified in FCRA, and thus cause[s] concrete harms." Mix, 2016 WL 7229140, at *6. "It is clear from the statute's legislative history that Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports. To that end, it was Congress' judgment, as clearly expressed in §§ 1681b(b)(2) and (3), to afford consumers rights to information and privacy." Thomas, 193 F. Supp. 3d at 633.

Defendant argues it did not violate the FCRA's disclosure and authorization requirements because plaintiff was not confused by the disclosure form. (Docket 29 at p. 6). The fundamental point is that defendant's deviation from the statute's disclosure standards did not vitiate

13

plaintiff's authorization for defendant to obtain his background information. However, the "proper inquiry is whether a procedural violation [of § 1681b(b)(2)(A)] creates a 'risk of real harm.' " Mix, 2016 WL 7229140, at *5 (quoting Spokeo, 136 S. Ct. at 1549-50). The court finds an employer "does create a real risk of harm" when it uses "a disclosure that, because it is merely one section of a larger document, results in 'information overload' which inhibits a consumer's ability to agree to a background check with full knowledge of their rights and the potential consequences." Id. "Drawing all reasonable inferences in favor of the non-moving party," Syed, 853 F.3d at 499, the court finds plaintiff's allegations that the disclosure was "wordy" and not in a "stand-alone document" sufficiently show the disclosure created a risk of real harm. (Docket 1-1 at p. 15). Plaintiff's claims grounded in § 1681b(b)(2)(A) allege a concrete injury under Article III.

The second section of the FCRA at issue in this case, § 1681b(b)(3)(A), provides:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under section 1681g(c)(3) of this title.

Thomas held this section "delineates substantive rights[]" because it "provides a consumer with a right to certain information (the consumer report and a description of rights conferred by the FCRA) before an employer takes adverse action based on that report. By requiring that the consumer receive the

foregoing information <u>before</u> adverse action is taken, the statute provides the consumer with a right to review the report and discuss it with his putative or current employer before adverse action is taken against him." <u>Thomas</u>, 193 F. Supp. 3d at 632 (emphasis in original) (citing H.R. Rep. No. 10-486, 103d Cong. 2d Sess. 30-31 (1994)).

The FCRA background outlined above applies to § 1681b(b)(3)(A) just as it does § 1681b(b)(2)(A). <u>See</u> <u>supra</u> pp. 12-13. The reasoning underlying the court's determination § 1681b(b)(2)(A) grants substantive informational and privacy rights "is applicable not only to the disclosure requirements of § 1681b(b)(2)(A) but also to the notice requirements of § 1681b(b)(3)(A) . . . ." <u>Mix</u>, 2016 WL 7229140, at *6. Specifically, § 1681b(b)(3)(A) provides a consumer with a substantive right to information prior to adverse employment action. <u>See</u> <u>Thomas</u>, 193 F. Supp. 3d at 632. Plaintiff's claims grounded in § 1681b(b)(3)(A) constitute an Article III concrete injury.

Defendant claims because the information regarding plaintiff's background was accurate, he fails to allege a concrete injury. (Dockets 29 at pp. 3-4 & 32 at p. 3). "But the broad principle that the holding in *Thomas* rests on—that the violation of statutory rights may in itself be a concrete injury—is not limited to situations where the violation of those rights results in the dissemination of false information." <u>Mix</u>, 2016 WL 7229140, at *5. Focusing on whether there is a risk of real harm, "[i]n the context of employment-related background checks, information that is true but amenable to contextual explanation, delivered without time to provide that explanation,

does create a risk of real harm." Id. (citing Thomas, 193 F. Supp. 3d at 638). The crux of the injury here is not whether the information is accurate, it is defendant depriving plaintiff of his right to information before being fired.

Defendant argues that finding plaintiff's FCRA claims constitute injuries is inconsistent with the United States Court of Appeals for the Eighth Circuit decision Braitberg v. Charter Commc'ns, Inc., 836 F.3d 925 (8th Cir. 2016). (Docket 29 at p. 4). Braitberg involved a cable company's retention of Mr. Braitberg's personal identifying information after he canceled his cable services, which violated the Cable Communications Policy Act ("CCPA"). Id. at 926-27. Mr. Braitberg claimed a violation of his privacy rights because the CCPA provides "[a] cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information [by the subscriber] or pursuant to a court order." 47 U.S.C. § 551(e); see Braitberg, 836 F.3d at 927. The Eighth Circuit held Mr. Braitberg lacked standing because he "identifies no material risk of harm from the retention; a speculative or hypothetical risk is insufficient. Although there is a common law tradition of lawsuits for invasion of privacy, the retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts." Braitberg, 836 F.3d at 930. The United States Court of Appeals for the Third Circuit interprets Braitberg "as creating a requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' before he can bring suit . . . ." In re

Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 637 (3d Cir. 2017).

The court finds its determination that plaintiff alleges a concrete injury under the FCRA is consistent with Braitberg. First, the court disagrees with In re Horizon's view of Braitberg. In discussing Mr. Braitberg's failure to identify a "material risk of harm," the Eighth Circuit was not raising the standing bar—it was explaining why the CCPA claim was " 'a bare procedural violation, divorced from any concrete harm.' " Braitberg, 836 F.3d at 930 (quoting Spokeo, 136 S. Ct. at 1549). Even if In re Horizon's interpretation is correct, plaintiff meets that standard here because he sufficiently showed risk of harm to his informational and privacy rights granted via § 1681b(b)(2)(A) and § 1681b(b)(3)(A). See supra pp. 12-16. Second, Braitberg deals with the CCPA, not the FCRA. The court grounds its conclusion regarding the substantive rights the FCRA confers in the statute's backdrop and text, so Braitberg's holding does not directly apply to this case. And third, Braitberg involves the retention of information lawfully obtained. The core of this case is plaintiff's information was obtained in violation of informational and privacy rights granted by the FCRA. The retention of information in Braitberg was an extension of the status quo, and the acquisition of information in this case was a disruption of a status quo where plaintiff's FCRA protections were intact.

Because plaintiff alleges a concrete injury under the FCRA, the court finds he has Article III standing.

## II. DEFENDANT'S MOTION TO DISMISS COUNTS NINE AND TEN

Defendant moves to dismiss counts nine and ten of plaintiff's first amended complaint, the FCRA and RICO claims, because they are not timely. (Docket 6 at pp. 5-10).  Defendant argues under Federal Rule of Civil Procedure 12(b)(6) the court should dismiss counts nine and ten for failure to state a claim upon which the court can grant relief.  Id. at pp. 4-5.

Under Rule 12(b)(6), plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Two "working principles" underlie Rule 12(b)(6) analysis.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint.  See id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted).  The court does, however, "take the plaintiff's factual allegations as true."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 678 (citation omitted).  The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Braden, 588 F.3d at 594.

"A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time-

18

barred." Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) (citing Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008)).

### a. Timeliness

### i. Count Nine: Fair Credit Reporting Act

For plaintiff's FCRA claim[4] to be timely, defendant points out it would need to relate back to the original complaint under Federal Rule of Civil Procedure 15. (Docket 6 at pp. 5-6). This is because the date of the first amended complaint is after any applicable statute of limitations period was exceeded. Id. at p. 7. Defendant contends the claims in plaintiff's initial complaint relate to facts separate from the facts plaintiff alleges in his FCRA claim. Id. at p. 6. Defendant argues the initial complaint's facts connected to violations of common law duties, and the FCRA claim connects to new facts concerning whether defendant provided proper disclosure and notice before terminating plaintiff's employment based on a consumer report. Id. Defendant also asserts this argument shows it did not have adequate notice from the original complaint that plaintiff might later raise a FCRA claim. Id.

Defendant relies on the decision Alibris v. ADT LLC, No. 9:14-CV-81616, 2015 WL 5084231 (S.D. Fla. Aug. 28, 2015), from the United States District Court for the Southern District of Florida to support its argument. (Docket 6 at pp. 7-10). In Alibris, the defendant revoked a job offer to Mr. Alibris based on information revealed in a background check of Mr. Alibris. Alibris, 2015 WL

---

[4]Although in analyzing standing the court referred to plaintiff's FCRA "claims," the remaining analysis will refer to a single FCRA "claim" for clarity because it is an individual cause of action in the complaint.

5084231, at *2-3.  Mr. Alibris brought a suit in state court alleging common law claims and later filed an amended complaint adding a FCRA claim.  Id.  The court found the FCRA claim did not relate back because the facts in the first complaint differed too much from the facts in the FCRA claim.  Id. at *7.  The Alibris court determined Mr. Alibris failed to file his FCRA cause of action within the statute of limitations.  Id. at *7-8.

In response plaintiff argues the state court resolved the timeliness of his FCRA claim when it granted him leave to file his first amended complaint.  (Docket 11 at pp. 3-4).  Plaintiff contends the principle that "[a]fter removal, the federal court takes the case up where the State court left it off[]" prevents this court from analyzing the FCRA claim's timeliness in the context of defendant's motion to dismiss.  Id. at p. 3 (citing Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cty., 415 U.S. 423, 436 (1974)) (internal quotation marks omitted).  Plaintiff claims the proper context for defendant's timeliness argument is a motion to dissolve or modify the state court's order pursuant to 28 U.S.C. § 1450.  Id. at p. 4.

Addressing the substance of defendant's argument on the FCRA claim's timeliness, plaintiff asserts the claim relates back under Federal Rule of Civil Procedure 15(c)(1)(B) because it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ."  Id. at p. 5 (quoting Fed. R. Civ. P. 15(c)(1)(B)) (internal quotation marks omitted).  Plaintiff notes that courts liberally construe Rule 15(c), and he

argues his original complaint sufficiently placed defendant on notice of a FCRA claim down the line.  <u>Id.</u> at pp. 6-8.

Defendant argues the state court's determination that plaintiff may amend his complaint does not determine whether plaintiff's new claims relate back to his original complaint.  (Docket 13 at pp. 1-3).  Defendant's reply emphasizes the original complaint's lack of notice of an FCRA claim based on the distinct set of facts underlying the FCRA cause of action.  <u>Id.</u> at pp. 3-4.  Defendant contends plaintiff's FCRA claim cannot be considered part of a "scheme" originally pled or a "natural offshoot" of the prior complaint.  <u>Id.</u> at pp. 5-6.

### 1. Rule 15

The court rejects plaintiff's argument that the state court already addressed the relation back issue.  Plaintiff characterizes defendant's motion to dismiss as a "test [of] the sufficiency of the pleadings in the First Amended Complaint[,]" which "does not allow for collateral attack upon the issue of timeliness . . . ."  (Docket 11 at p. 4).  Under plaintiff's view, defendant's motion is an effort to get this court to re-evaluate a settled state court ruling after removal to federal court.  <u>Id.</u>

The law on Rule 15 does not support plaintiff's position.  Courts determine whether a plaintiff may amend a complaint under Rule 15(a) and courts evaluate relation back of the amendment under Rule 15(c).

Under Rule 15(a), a plaintiff may amend a complaint as a matter of right if the amendment occurs within a specified time period after service of the

complaint. Fed. R. Civ. P. 15(a)(1)(A)-(B). Beyond that time period the plaintiff must obtain the defendant's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Courts freely permit amended complaints as justice requires. See Friedman v. Farmer, 788 F.3d 862, 869 (8th Cir. 2015) ("A district court 'should freely give leave [to amend] when justice so requires.' ") (citing Fed. R. Civ. P. 15(a)). But courts also ask whether denying leave to amend is proper because of the plaintiff's "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003) (internal quotation marks omitted).

A court asks entirely different questions in determining whether an amendment relates back to an original complaint. See Fed. R. Civ. P. 15(c). When a plaintiff's amended complaint introduces a new claim, the court must determine whether the new claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). "To arise out of the same conduct, transaction, or occurrence, the claims must be tied to a common core of operative facts." Taylor v. United States, 792 F.3d 865, 869 (8th Cir. 2015) (internal quotation marks omitted) (citations omitted). "New claims must arise out of the same set of facts as the original claims, and [t]he facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim." Id. (internal quotation marks omitted) (quoting Mandacina v. United States, 328

F.3d 995, 1000 (8th Cir. 2003)); see Mack v. Marquand, No. CIV. 09-5079, 2011 WL 4529343, at *7 (D.S.D. Sept. 28, 2011) ("Under Rule 15[(c)], the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.") (internal quotation marks omitted) (citing Slayton v. Am. Express Co., 460 F.3d 215, 228 (2d Cir. 2006)). "Since the purpose of Rule 15(c) is to permit cases to be decided on their merits, it has been liberally construed." Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1543 (8th Cir. 1996).

Courts conduct different inquiries and face different questions when addressing Rule 15(a)[5] and Rule 15(c) matters. "The addition of new claims to an amended pleading does not alone defeat relation back; the question instead is whether the initial pleading provided a defendant with adequate notice of the potential new claims." See Quaak v. Dexia, S.A., 445 F. Supp. 2d 130, 137 (D. Mass. 2006) (citation omitted). The many cases where courts permit amendment and later find no relation back serve as strong examples of this point. See, e.g., Taylor, 792 F.3d at 870-71. It is possible for the facts of a

---

[5]Because the leave to amend issue arose in state court, the state court did not apply a Federal Rule of Civil Procedure. See Docket 14-2. But the point remains that the state court did not have a Rule 15(c) relation back issue before it. Although the state court applied South Dakota law in ruling on plaintiff's leave to amend his complaint, this analysis is not altered by that distinction because the South Dakota standard for amending a complaint is comparable to the federal standard. See SDCL § 15-6-15(a); see also Berbos v. Krage, 754 N.W.2d 432, 434 (S.D. 2008) ("Motions to amend engage the sound discretion of the trial court; thus decisions to grant or deny will not be disturbed absent a clear abuse of discretion resulting in prejudice to the nonmovant.") (internal quotations marks omitted) (citations omitted).

case to make the Rule 15(a) and Rule 15(c) analyses overlap.[6]  This is not that case, and plaintiff has not shown it is.

Plaintiff's position also does not find support in the state court record. During the state court's hearing on plaintiff's request to amend his complaint, counsel for plaintiff stated "[n]ow the main consideration, as the Court knows, is whether or not granting plaintiff's motion for leave to amend would cause prejudice to defendant Wells Fargo." (Docket 14-2 at p. 3).  In making its ruling, the state court framed the issue the following way: "the statute and the case law in South Dakota, as I've indicated a couple of times here, is liberal in allowing the amendment of a complaint to proceed unless there's been a showing of prejudice." Id. at p. 21.  The state court's written order granting leave to amend consists of one page and does not indicate the court considered any issues about the amendment's timeliness.  (Docket 14-1).  The record demonstrates the state court did not consider whether the new claims in plaintiff's first amended complaint were timely because they properly related back.  Based on statements from plaintiff's counsel and the state court in its oral ruling, the only issue resolved at the hearing was whether plaintiff may amend his complaint.  See Docket 14-2.

---

[6]For example, a court could deny leave to amend on the basis of an amendment being futile because the amendment could not possibly relate back and be timely.  That scenario is not applicable because the plaintiff was granted leave to amend.  (Docket 14-2).

## 2. Relating back

The FCRA has two applicable statutes of limitations: "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability[] . . . [or] 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. Neither party argues against plaintiff's termination date, February 15, 2011, serving as the basis for potential liability under the FCRA and the date the statute of limitations clock started. If Plaintiff's FCRA claim relates back, it is timely under either statute of limitations because plaintiff filed his original complaint on March 18, 2011, approximately one month after defendant terminated his employment. (Docket 14-3). The issue now becomes whether plaintiff's FCRA claim relates back to his original complaint. The specific question is whether the FCRA cause of action "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B).

"[I]f plaintiff attempts to allege an entirely different transaction by amendment, Rule 15(c)(1)(B) will not authorize relation back." 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 1497 (2010). "For example, amendments alleging the separate publication of a libelous statement, the breach of an independent contract, the infringement of a different patent, or even a separate violation of the same statute may be subject to the defense of statute of limitations because of a failure to meet the transaction standard." Id. "On the other hand, amendments that merely . . .

expand or modify the facts alleged in the earlier pleading meet the Rule 15(c)(1)(B) test and will relate back." <u>Id.</u>

"Because the rationale of the relation-back rule is to ameliorate the effect of the statute of limitations, rather than to promote the joinder of claims . . . , the standard for determining whether the amendments qualify under Rule 15(c) is not simply an identity of transaction test. Although not expressly mentioned in the rule, the courts also inquire into whether the opposing party has been put on notice regarding the claim . . . raised by the amended pleading." <u>Id.</u> "[A] failure of notice will prevent relation back." <u>Id.</u>

"To say that notice is key does not answer the question what level of notice is sufficient . . . . It has been suggested that the requisite notice must be given by the content of the original pleadings. Other cases have taken a broader view and have held that it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings. This position seems sound since it is unwise to place undue emphasis on the particular way in which notice is received." <u>Id.</u> "[T]he better approach is to determine whether the adverse party, viewed as a reasonably prudent person, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question." <u>Id.</u>

Rule 15(c)(2) "relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common core of operative

facts uniting the original and newly asserted claims." <u>Mayle v. Felix</u>, 545 U.S. 644, 659 (2005) (internal quotation marks omitted).  Understanding the rule this way "is consistent with the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." <u>Krupski v. Costa Crociere S. p. A.</u>, 560 U.S. 538, 550 (2010).

A central issue in this analysis is what facts constitute the "common core of operative facts." <u>Taylor</u>, 792 F.3d at 869 (citing <u>Mayle</u>, 545 U.S. at 664). Based on the briefing, defendant's view is the common core of operative facts consists of defendant choosing to hire and then fire plaintiff.  <u>See</u> Docket 6 at pp. 5-10.  Plaintiff does not clearly state his position on what makes up the core of operative facts, but his briefing suggests a view that many more aspects of defendant's conduct surrounding plaintiff's termination are within the core facts, including the process defendant followed when screening plaintiff just before firing him.  <u>See</u> Docket 11 at pp. 5-8.

Plaintiff's position is too expansive.  The most central fact in plaintiff's original and amended complaints is the termination of his employment.  <u>See</u> Dockets 1-1 & 14-3.  Plaintiff invites the court to view nearly any claim arising from his termination as a claim relating back under Rule 15(c).  Under plaintiff's argument, it is difficult to see how his FCRA claim would relate back, but a claim alleging defendant fired him because of his religion—based on facts gathered in discovery—would not relate back.  <u>See</u> 42 U.S.C. § 2000e-2(a)(1).

Both the FCRA and religious discrimination claims would implicate plaintiff's employment and defendant's conduct in terminating plaintiff, but the religion claim is too attenuated to meet even a "liberally construed" Rule 15(c). <u>See</u> <u>Alpern,</u> 84 F.3d at 1543.

In <u>Palmer v. Homecomings Financial LLC</u>, the United States District Court for the District of Columbia refused to adopt an interpretation of Rule 15(c) similar to what plaintiff advances here. 677 F. Supp. 2d 233, 237-39 (D.D.C. 2010). After Ms. Palmer refinanced her home mortgage loan with Homecomings Financial LLC ("Homecomings"), she sued Homecomings for violating Section 6 of the Real Estate Settlement Procedures Act ("RESPA").[7] <u>Id.</u> at 235. Ms. Palmer amended her complaint to include a violation of RESPA Section 8.[8] <u>Id.</u> at 236-37. Although both violations related to the same refinancing agreement, the <u>Palmer</u> court held the Section 8 claim did not relate back because the facts underlying it were not close enough to the facts of the Section 6 claim. <u>Id.</u> at 238-39. "The 'conduct, transaction, or occurrence' language of Rule 15(c) cannot be interpreted so broadly as to apply to all of the parties' actions regarding the refinancing agreement." <u>Id.</u> at 238 (citing <u>Mayle</u>, 545 U.S. at 660-64).

---

[7]"RESPA Section 6 requires mortgage lenders to disclose to loan applicants whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding and imposes specific notice requirements when such a transfer occurs." <u>Id.</u> at 238 (citing 12 U.S.C. § 2605).

[8]The Section 8 claim has two parts: "(i) giving kickbacks to mortgage brokers for the referral of business in violation of [12 U.S.C.] § 2607(a) and (ii) splitting settlement charges with brokers for services not actually performed in violation of § 2607(b)." <u>Id.</u> at 236.

The <u>Palmer</u> court compared Ms. Palmer's theory to a habeas petitioner who argues for relation back of an amendment because the amendment and the original pleading both connect to the criminal trial giving rise to the habeas petition. <u>Id.</u> at 238-39. The Supreme Court foreclosed such a position in <u>Mayle</u>. <u>Mayle</u>, 545 U.S. at 660-64 ("An approach of that breadth . . . views 'occurrence' at too high a level of generality.") (internal quotation marks omitted)). The court finds both the <u>Palmer</u> and <u>Mayle</u> situations useful in refusing to adopt plaintiff's expansive interpretation of Rule 15(c). The Rule "does not obliterate[] the statute of limitations . . . ." <u>Mayle</u>, 545 U.S. at 659.

At the same time, defendant's Rule 15(c) view is too restrictive. As noted above, defendant relies on the <u>Alibris</u> case to argue plaintiff's FCRA claim is grounded in a new set of facts. <u>Alibris</u>, 2015 WL 5084231; <u>see</u> <u>supra</u> Section II.a.i. (explaining the facts of <u>Alibris</u>). The facts of <u>Alibris</u> and this case are similar. <u>See</u> <u>Alibris</u>, 2015 WL 5084231, at *2-8. The <u>Alibris</u> court highlighted that the United States Court of Appeals for the Eleventh Circuit held "Rule 15(c) [is] to be used for a relatively narrow purpose . . . ." <u>Id.</u> at *7 (quoting <u>Farris v. United States</u>, 333 F.3d 1211, 1215 (11th Cir. 2003)). The court finds applying Rule 15(c) as the <u>Alibris</u> court did would not be consistent with the duty to "liberally construe[]" the rule as the Eighth Circuit directs.[9] <u>See</u> <u>Alpern</u>, 84 F.3d at 1543. Interpreting Rule 15(c) otherwise risks the inverse of the flaw

---

[9]The court is not necessarily holding there is a divide between the Eighth and Eleventh Circuits on this point of Rule 15(c). The court's limited finding here is the <u>Alibris</u> court's application of Rule 15(c) is distinct from Eighth Circuit law. <u>See</u> <u>Alpern</u>, 84 F.3d at 1543.

identified in Mayle: viewing "conduct, transaction, or occurrence" with too great an emphasis on specificity. See Mayle, 545 U.S. at 660-64.

In determining this case's core of operative facts, the court strikes what it finds is the proper balance between defendant's interest in defending itself against timely lawsuits only, and the preference of Rule 15 for resolving a case on its merits. See Krupski, 560 U.S. at 550. The core of operative facts in this case includes defendant's conduct related to obtaining and using plaintiff's prior misdemeanor conviction as a basis for terminating his employment. With the filing of plaintiff's original complaint, "[d]efendant was on notice that it was under attack for the full range of its conduct with respect to its" acquisition and use of plaintiff's background information as a reason for firing him. See Quaak, 445 F. Supp. 2d at 137. The "full range" of defendant's conduct includes the process by which it screened plaintiff and re-discovered his earlier conviction. See id. Plaintiff's FCRA claim alleges defendant's process of acquiring plaintiff's criminal background information violated federal law. (Docket 1-1 at pp. 12-16). That claim "do[es] not come from out of the blue." Quaak, 445 F. Supp. 2d at 137. Although the original complaint does not mention the FCRA, it does discuss the federal statute FIRRE as part of what led to plaintiff's termination. (Docket 14-3 at pp. 5, 7-8). This undercuts defendant's claim it was on notice for only common law causes of action like those in the original complaint. The "facts provable under the amended complaint arose out of the conduct alleged in the original complaint[, so]

relation back is mandatory." Mack, 2011 WL 4529343, at *7 (internal quotation marks omitted) (citing Slayton, 460 F.3d at 227).

Plaintiff does not employ an "entirely distinct set" of facts to support his FCRA claim. See id. (internal quotation marks omitted) (citing Slayton, 460 F.3d at 227). An example of a distinct set of facts would be a new claim that defendant fired plaintiff on the basis of his religion in violation of 42 U.S.C. § 2000e-2(a)(1). That claim shares the operative fact of plaintiff's termination, but the facts necessary to prove it are separate from defendant's conduct in relying on plaintiff's earlier misdemeanor conviction to fire him.

Plaintiff's FCRA claim is timely because it relates back under Rule 15(c).

### ii. Count Ten: Racketeer Influenced Corrupt Organizations Act

#### 1. Relating back

Defendant advances a parallel argument asserting plaintiff's RICO claim should be dismissed because it is not timely. (Docket 6 at pp 10-12). Defendant argues plaintiff bases his RICO claim on brand new facts and it lacked notice of plaintiff alleging a new legal theory under RICO. Id. at pp. 10-11. As he did with his FCRA claim, plaintiff contends the state court already addressed the issue of his RICO claim's timeliness when it granted him leave to add the RICO count. (Docket 11 at pp. 3-4). The court rejects this argument from plaintiff for the same reasons it rejected the argument with respect to his FCRA claim: the state court did not consider whether his RICO claim was timely. See supra Section II.a.i.1. The remainder of plaintiff's argument that his RICO count is not time-barred is identical to his argument on the FCRA

31

count.  (Docket 11 at pp. 5-8).  Plaintiff's fundamental point is the RICO claim relates back to the original complaint.  Id.

The statute of limitations for a civil RICO action is four years.  Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987). Plaintiff does not state at what time he believes his RICO cause of action began to accrue, but his argument on whether his RICO claim relates back indicates he believes it started the day defendant fired him.  (Docket 11 at pp. 5-8). Defendant claims the statute of limitations clock started when it fired plaintiff on February 15, 2011.  (Docket 6 at pp. 11-12).  The court treats February 15, 2011, as the date the four-year statute of limitations clock began running. Consequently, plaintiff's RICO claim must relate back to his original complaint under Rule 15(c) to be timely.  The issue then is whether the added RICO count "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B).

The court need not restate the law on Rule 15(c).  See supra Section II.a.i.2.  In discussing plaintiff's FCRA claim, the court determined this case's core of operative facts includes defendant's conduct related to using plaintiff's prior misdemeanor conviction as a basis for terminating his employment.  See id.  The question is whether those facts sufficiently "unit[e] the original [claims] and newly asserted [RICO] claim[,]" Mayle, 545 U.S. at 659, or whether "the facts well pleaded" in the original complaint fail to "put [defendant] on notice." Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 949, 309 F.3d

1051, 1053 (8th Cir. 2002). As noted above, the original complaint placed defendant on notice of legal action against its "full range" of conduct related to acquiring plaintiff's background information and using it to fire him. See Quaak, 445 F. Supp. 2d at 137. The court finds a close reading of plaintiff's RICO claim reveals it relies on an "entirely distinct set" of facts and a legal theory for which defendant lacked notice. See Mack, 2011 WL 4529343, at *7 (internal quotation marks omitted) (citing Slayton, 460 F.3d at 227). If plaintiff's FCRA claim tests how "liberally construed" the application of Rule 15(c) can be, plaintiff's RICO claim goes beyond what that liberal interpretation can bear. See Alpern, 84 F.3d at 1543.

Plaintiff's RICO claim factually relates to his original complaint, but the RICO claim arises out of conduct far beyond the complaint's allegations. See Maegdlin, 309 F.3d at 1053-54; La. Wholesale Drug Co., Inc. v. Biovail Corp., 437 F. Supp. 2d 79, 86-87 (D.D.C. 2006) ("[W]hile factually connected, [the new claim did] not arise out of the conduct alleged in the original complaint.") (internal quotation marks omitted), aff'd sub nom., Meijer, Inc. v. Biovail Corp., 533 F.3d 857 (D.C. Cir. 2008). The first amended complaint introduces a new allegation of defendant instituting a systematic scheme called the "Background Check Project" in order to terminate employees en mass, reduce the payroll, erase employees' bonuses and benefits earned over years of work and damage the job market. (Docket 1-1 at p. 27). To carry out the Project, plaintiff alleges, defendant made repeated "affirmative fraudulent representations that Wells Fargo was required by federal regulation to abruptly and irreversibly terminate

hundreds if not thousands of employees." Id. at p. 28. Plaintiff claims

defendant directed these falsehoods to lower-level employees, the attorneys of

those employees, political entities and the media. Id.

Although the original complaint provided defendant notice plaintiff would

hold it accountable for the "full range" of its conduct, Quaak, 445 F. Supp. 2d

at 137, the widespread scheme alleged in the RICO count and the fraudulent

acts to perpetrate it fall outside that range. See Johnson Int'l Co. v. Jackson

Nat. Life Ins. Co., 812 F. Supp. 966, 971 (D. Neb. 1993) ("[T]he factual thrust of

the two theories of recovery is so different that a reasonably prudent person

would not have perceived exposure on the negligence theory of recovery when

served with the complaint on the contract theory of recovery.") (citing Morgan

Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 994-95 (8th Cir. 1989)), aff'd

and remanded on other grounds, 19 F.3d 431 (8th Cir. 1994). The facts of

defendant obtaining plaintiff's background information and terminating him on

the basis of its contents are in plaintiff's RICO claim, but the court does not

find the "facts provable under [the RICO claim] arose out of the conduct alleged

in the original complaint . . . ." Mack, 2011 WL 4529343, at *7 (internal

quotation marks omitted) (citing Slayton, 460 F.3d at 227). To find otherwise

would stretch Rule 15(c) too far. It would be closer to obliterating than relaxing

the statute of limitations. See Mayle, 545 U.S. at 659.

When the original complaint alleges a vast scheme and a subsequent

cause of action provides a new avenue for liability, the relation back question is

closer. In Quaak, a securities litigation case, the defendant was on notice "for

the full range of its conduct with respect to its scheme to inflate the price of [certain] stock." 445 F. Supp. 2d at 137-38 (collecting similar cases). The scope of conduct originally pled in Quaak is significantly broader than this case. Plaintiff's original complaint revolved around defendant obtaining and using his prior misdemeanor conviction to fire him. (Docket 14-3). Compared to Quaak, plaintiff's original allegations are narrow. Although plaintiff still gets the full benefit of Rule 15(c) and its liberal construction, his original complaint binds him and limits what subsequent claims relate back.

Plaintiff's RICO claim is not timely because it does not relate back under Rule 15(c).

## III. PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT

Plaintiff moved for leave to file a second amended complaint. (Docket 20). His proposed second amended complaint adds factual allegations, (Docket 22-2 at pp. 5-6), expands his FCRA claim to include details about the Statement of Work contract ("SOW") between defendant and First Advantage, Id. at pp. 12-17, modifies his RICO claim, Id. at pp. 18-38, and adds a RICO conspiracy count, Id. at p. 39. Plaintiff argues the possible reasons for not permitting amendment to his complaint are not present in this case. (Docket 22 at p. 5). Plaintiff explains defendant has known of the "minor [factual] additions" in the amendments and the modifications of current counts assist resolving this case on its merits. Id. Plaintiff contends defendant cannot show amendment at this stage would cause prejudice and plaintiff does not make the

motion "in bad faith, for a dilatory motive, or after repeated failures to cure deficiencies by amendments previously allowed." Id.

Defendant's position is plaintiff's motion should be denied because it is dilatory and futile. (Docket 23 at pp. 5, 7). Defendant argues plaintiff had the information necessary to plead the contents of his proposed second amended complaint when he filed his first amended complaint. Id. at p. 6. Defendant claims this demonstrates a "delay tactic to avoid dismissal . . . ." Id. According to defendant, plaintiff's proposed amendments are futile because his FCRA and RICO claims are not timely. Id. at pp. 7-8. Defendant directs several arguments toward showing plaintiff's amendments to the FCRA claim are futile because they fail to adequately state a claim. Id. at pp. 8-15. First, plaintiff's allegation regarding defendant acquiring criminal background information beyond the timeframe the FCRA permits misstates the FCRA. Id. at pp. 8-11. Second, plaintiff's alleged FCRA violation could hold First Advantage liable but not defendant. Id. at p. 9. Third, the information defendant acquired on plaintiff's criminal background falls within an exception in the FCRA. Id. at pp. 11-13. And fourth, the SOW plaintiff discusses does not establish any enforceable rights for him against defendant. Id. at pp. 14-15. Defendant then highlights the deficiencies it sees in plaintiff's RICO claim. Id. at pp. 15-17. Those problems, defendant continues, cause plaintiff's new RICO conspiracy claim to fail. Id. at p. 17.

In response to defendant's arguments, plaintiff contends the criminal background information defendant obtained does not meet the applicable

exception under the FCRA. (Docket 25 at pp. 5-7). Plaintiff also clarifies that his amendments discussing the SOW do not attempt to enforce rights under the SOW, rather plaintiff includes the discussion to flesh out his FCRA claim. Id. at p. 7.

Earlier the court set forth the law on granting leave to amend complaints under Rule 15(a), so it need not restate the law here. See supra Section II.a.i.1. "The Eighth Circuit Court of Appeals takes a 'liberal viewpoint towards leave to amend' and leave 'should normally be granted absent good reason for a denial.'" Libertarian Party of S.D. v. Krebs, 312 F.R.D. 523, 525 (D.S.D. 2016) (quoting Popp Telcom v. Am. Sharecom, Inc., 210 F.3d 928, 943 (8th Cir. 2000)). The court must determine whether denial of plaintiff's proposed amendments is proper because of plaintiff's "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Hammer, 318 F.3d at 844 (internal quotation marks omitted). "Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." Becker v. Univ. of Neb., 191 F.3d 904, 908 (8th Cir. 1999) (citing Gamma–10 Plastics, Inc. v. Am. President Lines, Ltd., 32 F.3d 1244, 1256 (8th Cir. 1994)).

### a. RICO

The court determined plaintiff's RICO claim is not timely. See supra Section II.a.ii.1. In light of that finding, the court denies as futile plaintiff's proposed amendments to his RICO claim and the addition of a RICO

conspiracy count. Plaintiff's new RICO conspiracy claim rests on the same facts as the first amended complaint's RICO claim, so the court's Rule 15(c) analysis applies to the conspiracy count. (Docket 22-1 at p. 39); <u>see</u> <u>supra</u> Section II.a.ii.1. "An amendment is futile if 'the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" <u>Libertarian Party</u>, 312 F.R.D. at 525 (quoting <u>Zutz v. Nelson</u>, 601 F.3d 842, 850 (8th Cir. 2010)). Neither of plaintiff's RICO counts survive the Rule 12(b)(6) standard because neither is timely. <u>See</u> <u>supra</u> Section II.a.ii.1. The amendments relating to the RICO claims are futile. <u>Libertarian Party</u>, 312 F.R.D. at 525.

### b. FCRA

Defendant asserts the amendment to plaintiff's FCRA claim is a dilatory tactic aimed at avoiding dismissal. (Docket 23 at pp. 5-6). "[I]t is common practice for a party to seek leave to amend in response to a motion to dismiss." <u>Ireland v. Anderson</u>, No. 3:13-cv-3, 2014 WL 3732014, at *2 (D.N.D. July 25, 2014) (citing <u>Jameson v. State Farm Mut. Auto. Ins. Co.</u>, 871 F. Supp. 2d 862, 869 (W.D.Mo. May 14, 2012)). "In fact, the Eighth Circuit . . . has stated that a 'motion to amend a complaint may moot a pending motion to dismiss.'" <u>Dakota Provisions, LLC v. Hillshire Brands Co.</u>, 4:16-CV-04099, 2016 WL 7441628, at *3 (D.S.D. Dec. 27, 2016) (quoting <u>Pure Country, Inc. v. Sigma Chi Fraternity</u>, 312 F.3d 952, 956 (8th Cir. 2002)). Defendant supports its argument by pointing to the extended lifespan of this case and plaintiff's longstanding awareness of the facts included in the proposed amendment.

(Docket 23 at pp. 5-6).  This is insufficient to show plaintiff's actions are dilatory or amendment will inflict prejudice on defendant.  Considering the lack of support for defendant's argument and the Eighth Circuit's "liberal viewpoint" on granting leave to amend, the court finds plaintiff's request is not dilatory.  See Popp Telecom, 210 F.3d at 943 (internal quotation marks omitted).

Defendant argues the amendment to plaintiff's FCRA claim is futile because the count fails to adequately state a claim.  (Docket 23 at pp. 7-15).  Based on the finding above regarding the FCRA claim's timeliness, the court rejects defendant's assertion that the amended FCRA claim is futile because it is time-barred.  (Docket 23 at pp. 7-8).  Plaintiff proposes amending his FCRA claim to include the following sentence at paragraph 73: "Defendant and First Advantage procured consumer records, including records of non-convictions older than seven (7) years, in violation of the FCRA."  (Docket 22-1 at p. 14).  Defendant contends this addition misstates the FCRA because the statute permits reporting of "records of convictions of crimes which antedate[] the report by more than seven years."  15 U.S.C. § 1681c(a)(5); (Docket 23 at p. 9).  Defendant correctly reads the statute to permit reports of conviction records dating more than seven years back.  15 U.S.C. § 1681c(a)(5).  But defendant misreads the proposed paragraph because it relates to "non-convictions older than seven (7) years . . . ."  (Docket 22-1 at p. 14) (emphasis added).  A different proposed amendment to the complaint mentions "reports detailing any prior adverse criminal decisions . . . within seven (7) . . . years from the date of execution of the SOW."  Id. at p. 13.  This statement is less clear but seems to

relate to non-convictions. Some aspects of plaintiff's FCRA claim do connect to a prior conviction, but the proposed amendments do not bind themselves to convictions as defendant argues. See id. at pp. 13-17.

Defendant claims only First Advantage could be held liable under the allegations in paragraph 73. (Docket 23 at p. 9); 15 U.S.C. § 1681c(a). Although 15 U.S.C. § 1681c(a) does govern restrictions on consumer reporting agencies such as First Advantage, plaintiff's proposed second amended complaint expressly relies on §§ 1681n and 1681o to hold defendant liable. (Docket 22-1 at p. 17). Those sections govern the civil liability of persons for willful or negligent noncompliance. Defendant's potential liability under §§ 1681n and 1681o is straightforward and defendant does not present an argument otherwise.[10]

Even if plaintiff did rely on § 1681c as a path for liability, defendant still may be liable under the statute. Two issues are embedded in this argument. One is whether vicarious liability for a FCRA violation is consistent with the FCRA. Another issue is what actions defendant or First Advantage took that may support finding vicarious liability. As to the first issue, several courts have addressed this question in cases with circumstances slightly different from this one. See, e.g., Cole v. Am. Family Mut. Ins. Co., 333 F. Supp. 2d 1038, 1043-47 (D. Kan. 2004) (discussing cases where courts analyzed whether

---

[10]The court finds defendant's argument on § 1681c misguided. Although proposed paragraph 73 may set forth a violation of § 1681c, it is not clear plaintiff intends as much. The heart of plaintiff's FCRA claim is violations of §§ 1681b(b)(2) and (3)—not § 1681c. The court fully addresses defendant's arguments nonetheless.

an employer could be held liable for violating the FCRA when its employee obtained credit information contrary to the FCRA). The Eighth Circuit has not addressed the issue of vicarious liability and the FCRA, and courts have come to different results. See Jaycox v. GC Servs. Ltd. P'ship-Delaware, 440 F. Supp. 2d 1065, 1066 (E.D. Mo. 2006) ("Courts are split on whether a plaintiff can bring suit under the FCRA against an employer for the actions of its employee based on a theory of apparent authority.") (citing Jones v. Federated Fin. Reserve Corp., 144 F.3d 961 (6th Cir. 1998) (finding vicarious liability consistent with the FCRA)); Kodrick v. Ferguson, 54 F. Supp. 2d 788 (N.D. Ill. 1999) (finding vicarious liability not consistent with the FCRA); see also Ellis v. Penn. Higher Educ. Assistance Agency, No. CV 07-04498, 2008 WL 4451746, at *3-5 (C.D. Cal. Sept. 23, 2008) (discussing thoroughly the FCRA and vicarious liability).

Although the factual background of this case differs in some ways from other cases addressing the FCRA and vicarious liability, it is not proper at this stage of the litigation to resolve the question. The minimal briefing on the issue at this point is not proportionate to its possible significance. The limited facts before the court convince it "this [entire] issue would be more appropriately considered on a factual record, rather than on this motion to dismiss. The facts of the case may well shape the proper application of vicarious liability theories." Jaycox, 440 F. Supp. 2d at 1066 (citing Cole, 333 F. Supp. 2d at 1046-47 ("[V]icarious liability cannot be properly considered in a motion to dismiss.")). Plaintiff pled sufficient facts to show this aspect of his FCRA claim

is not futile, "and the [c]ourt will not confront this serious issue of first impression on such a limited record." Id.

The court comes to a parallel conclusion on defendant's argument that plaintiff's criminal background information falls under an exception in the FCRA. The FCRA excludes certain consumer reports from the standards it imposes on disclosures and other matters detailed in the statute. See 15 U.S.C. § 1681a(y). Defendant claims the report on plaintiff's criminal background is covered by the exception for a "communication . . . made to an employer in connection with an investigation of . . . compliance with Federal, State, or local laws and regulations . . . ." 15 U.S.C. § 1681a(y)(1)(B). This issue came before the United States District Court for the District of Minnesota in Martin v. First Advantage Background Servs. Corp., 877 F. Supp. 2d 754, 760-61 (D. Minn. 2012). The Martin plaintiff pled FCRA violations and the defendants moved to dismiss because they believed the background information fit under this exception to FCRA's reporting restrictions. Id. at 759-61. The Martin defendants claimed the FCRA's exception on reporting information in an effort to comply with federal law prevented the plaintiff from holding them liable. Id.; see 15 U.S.C. § 1681a(y)(1)(B). The Martin court decided "[a]lthough this issue may prove simple at the summary judgment stage, the Court declines to grant Defendants' motion to dismiss. . . . Whether or not the report at issue in this case qualifies as a consumer report [or falls under an exception] depends on the circumstances surrounding Wells Fargo's decision to obtain it." Martin, 877 F. Supp. 2d at 761. The court finds

defendant's argument on the exception in 15 U.S.C. § 1681a(y)(1)(B) is not suitable for resolution in the context of a motion to dismiss.[11] See Martin, 877 F. Supp. 2d at 761.

Defendant's last argument for finding plaintiff's FCRA claim futile is that plaintiff fails to demonstrate he has enforceable rights under the SOW. (Docket 23 at pp. 14-15). Defendant takes issue with plaintiff's amendment stating defendant acted "in contravention of the FCRA and the SOW . . . ." (Docket 22-1 at p. 14). In response, plaintiff clarifies he "has not asserted a breach of contract claim to enforce the SOW. The SOW is cited in the complaint to show that Wells Fargo agreed to comply with the FCRA." (Docket 25 at p. 7). Plaintiff's explanation shows he is not attempting to hold defendant liable based on a violation of the SOW. Because plaintiff does not seek a remedy on the basis of defendant allegedly violating the SOW, defendant's arguments for dismissal on this point are not applicable and do not show futility.

The court finds count nine, plaintiff's FCRA claim, of the proposed second amended complaint is proper under Rule 15(a).

## III. PLAINTIFF'S MOTION TO COMPEL

Plaintiff filed a motion for the court to compel defendant to pay fees related to defendant's deposition of plaintiff's expert. (Docket 15). Mark C.

---

[11]Later in the Martin litigation the court issued a ruling granting in part and denying in part defendants' motion for summary judgment. Martin v. First Advantage Background Servs. Corp., No. 11-3357, 2014 WL 1260392 (D. Minn. Mar. 26, 2014) (referred to here as Martin II). The defendant in this case cites Martin II to argue it cannot be liable due to the exception in 15 U.S.C. § 1681a(y)(1)(B). (Docket 23 at pp. 12-13). Martin is a useful comparison to this case and Martin II is not because this case is at the motion to dismiss stage, not the summary judgment stage where the record is more developed.

Riley is plaintiff's "banking regulatory compliance expert . . . ." (Docket 16 at p. 1). On April 29, 2016, defendant deposed him. Id. at pp. 1-2. Mr. Riley traveled two hours to the deposition, which lasted eight hours. Id. at p. 2. Leading up to the deposition, Mr. Riley reviewed documents for eight hours and fifteen minutes and separately prepared with plaintiff's counsel for eight hours. (Docket 17-1 at p. 2). Defendant paid for Mr. Riley's time traveling to the deposition and the time at the deposition. (Docket 17-5). Defendant refuses to pay for the eight hours and fifteen minutes of document review and the eight hours Mr. Riley met with plaintiff's counsel. (Docket 18). Plaintiff's motion seeks to compel payment for this remainder of Mr. Riley's work. (Docket 16).

Plaintiff claims "Mr. Riley's total invoiced time, including his preparation time, is consistent with Eighth Circuit case law." Id. at p. 4 (citing Hurst v. United States, 123 F.R.D. 319, 321 (D.S.D. 1988)). Plaintiff asserts the "approximately two-to-one ratio of preparation to deposition time . . . is well-within the recoverable range established by case precedent." Id. at p. 5.

In response defendant relies on Rock River Commc'ns., Inc. v. Universal Music Group, 276 F.R.D. 633 (C.D. Cal. 2011). Defendant argues Rock River demonstrates the unfairness involved in requiring it to pay for Mr. Riley's preparation. (Docket 18 at pp. 4-5). Specifically, defendant alleges Federal Rule of Civil Procedure 26(b)(4)(E) should account for defendant's inability to control how much time Mr. Riley spends preparing for his deposition. Id. Defendant states "[a]t the very least, Wells Fargo should not be required to pay

for Riley's eight-hour preparation session with Benson's counsel . . . ." <u>Id.</u> at p. 6.

Rule 26(b)(4)(E) of the Federal Rules of Civil Procedure provides "[u]nless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery . . . ."  This rule necessarily includes the time an expert spends reviewing records in preparation for his deposition.  <u>Hose v. Chicago and North Western Transportation Co.</u>, 154 F.R.D. 222, 228 (S.D. Iowa 1994); <u>see</u> <u>also</u> <u>Hurst</u>, 123 F.R.D. at 321 (the expert witness "is entitled to his hourly fee for the time he spent preparing himself for the deposition and the time during which he was deposed.").  The court finds Mr. Riley's eight hours and fifteen minutes reviewing documents is compensable time under Rule 26(b)(4)(E). <u>Hurst</u>, 123 F.R.D. at 321.

Whether Mr. Riley's eight hours working with plaintiff's counsel is compensable is a separate question.  The <u>Rock River</u> court highlighted some potentially unfair consequences of placing this type of cost on the party deposing an adverse party's expert.  <u>Rock River</u>, 276 F.R.D. at 635-37.  <u>Rock River</u> correctly points out "[s]hifting expert fees for deposition preparation creates what economists call an externality: the retaining party determines how much deposition preparation it deems desirable, but the deposing party pays for it.  When benefit and cost are separated like this, the risk of unfairness is great." <u>Id.</u> at 636.  However, interpreting Rule 26(b)(4)(E) this way suggests a court should start with the assumption parties will violate Rule 1, which

requires parties to employ the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The court appreciates the <u>Rock River</u> perspective, but finds the approach in <u>Schmidt v. Solis</u> stronger. <u>Schmidt v. Solis</u>, 272 F.R.D. 1, 2-3 (D.D.C. 2010). According to the <u>Schmidt</u> court, "that a lawyer will prepare the expert and consume some of her time is such a certainty that it should always be considered as a form of 'responding to discovery' under the pertinent rule, and should always be paid by the party who is taking the deposition, whatever her motive, intent or purpose. This also advances the rule's purpose of discouraging needless deposition of experts." <u>Id.</u> at 3. As to fairness, the <u>Schmidt</u> court stated "[p]revention of unfairness . . . can be left to ascertaining the reasonableness of what is being charged, and it would be in that context that factors such as the complexity of the report and the time spent since completing it would be considered." <u>Id.</u> (citing <u>Borel v. Chevron U.S.A. Inc.</u>, 265 F.R.D. 275, 278 (E.D. La. 2010) ("[A]s long as such fees are reasonable . . . an expert may be compensated for time spent preparing for a deposition.")). The court will not draw a bright line excluding an expert's preparation with counsel from costs the party conducting the deposition may need to cover under Rule 26(b)(4)(E). <u>See</u> <u>Schmidt</u>, 272 F.R.D. at 2-3. Mr. Riley's time working with plaintiff's counsel leading up to his deposition is compensable under Rule 26(b)(4)(E). <u>See</u> <u>id.</u>

The issue then becomes whether Mr. Riley's eight hours and fifteen minutes of document review and eight hours meeting with plaintiff's counsel is reasonable under Rule 26(b)(4)(E), which would require defendant to reimburse Mr. Riley for that time. "[A]n expert may not charge an excessive amount of preparation time, and if an expert does so, a court may reduce that time to a 'reasonable' amount of time." Handi-Craft Co. v. Action Trading, S.A., No. 4:02 CV 1731, 2003 WL 26098543, at *17 (E.D. Mo. Nov. 25, 2003) (citing N.Y. v. Solvent Chem. Co., Inc., 210 F.R.D. 462, 471-72 (W.D.N.Y. 2002)). Courts often exercise their discretion on this issue by reducing the time compensable under the Rule to a reasonable amount. See, e.g., id. (determining two days compensable and not the three days an expert spent preparing for a one-day deposition); see Borel, 265 F.R.D. at 278 (determining one-and-a-half hours preparation and not three hours compensable for a three-hour deposition).

The court finds the sixteen hours and fifteen minutes Mr. Riley prepared for his eight-hour deposition is not reasonable. This case is complex, which may require lengthy preparation, but plaintiff does not sufficiently show how this case's complexity justifies Mr. Riley's extensive preparation with counsel. See Handi-Craft, 2003 WL 26098543, at *17 ("While the court recognizes that the instant litigation is complex and intricate, [the expert] does not indicate why he needs such preparation time, save to say that it would enable him to 'best represent [defendant's] position and answer the likely questions at a further     deposition.' "); see also Solvent, 210 F.R.D. at 466, 471-72 (determining three hours—not seventeen hours and forty-five minutes— reasonable for a nine-hour deposition in a complex case).[12]  Considering this

_____

[12]Although the Solvent court provided a "caveat" about time an expert spends preparing with her own counsel not being compensable, that does not

case's complexity, the court finds a total of ten hours and fifteen minutes spent preparing for Mr. Riley's eight-hour deposition is reasonable. Rule 26(b)(4)(E) mandates defendant reimburse Mr. Riley for the ten hours and fifteen minutes he prepared for his deposition.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion to dismiss (Docket 5) is granted in part and denied in part. The court does not dismiss plaintiff's FCRA claim. The court dismisses plaintiff's RICO claim.

IT IS FURTHER ORDERED that plaintiff's motion to amend his complaint (Docket 20) is granted in part and denied in part. Plaintiff shall amend his FCRA claim as proposed. The court denies all amendments related to plaintiff's RICO claim and RICO conspiracy claim.

IT IS FURTHER ORDERED that plaintiff's motion to compel payment of expert deposition costs (Docket 15) is granted in part and denied in part. Defendant shall reimburse Mr. Riley for ten hours and fifteen minutes of deposition preparation.[13]

Dated June 26, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
_____
JEFFREY L. VIKEN
CHIEF JUDGE

---

change the analysis of what is reasonable. See Solvent, 210 F.R.D. at 466, 471-72. What preparation time is compensable and what compensable time is reasonable are distinct issues.

[13]Mr. Riley's hourly rate is not in dispute. Defendant shall reimburse him at the same rate it already did when paying for his travel time and time at the deposition.